IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 16, 2016 at Knoxville

## TIMOTHY RICHARD SINGLETON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2013-B-1136     Cheryl A. Blackburn, Judge**

---

**No. M2015-02319-CCA-R3-PC – Filed October 17, 2016**

---

The Petitioner, Timothy R. Singleton, appeals as of right from the denial of his petition for post-conviction relief, wherein he challenged the validity of his guilty plea to aggravated robbery.  See Tenn. Code Ann. § 39-13-402.  On appeal, the Petitioner contends that he did not enter into his guilty plea knowingly and voluntarily because he did not understand the agreement due to his mental illness.  Additionally, he claims his attorney provided ineffective assistance of counsel by failing to adequately investigate the Petitioner's mental health history and using such information to arrange a better plea deal with the State.  Finally, the Petitioner claims he received ineffective assistance of counsel based on trial counsel's failure to file a motion to suppress his confession.  Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

Ryan C. Caldwell, Nashville, Tennessee, for the appellant, Timothy Richard Singleton.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Glenn R. Funk, District Attorney General; and Megan King, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL BACKGROUND

On May 3, 2013, the Davidson County Grand Jury indicted the Petitioner for one count of aggravated robbery.  On August 15, 2013, the Petitioner pled guilty as charged

in exchange for a sentence of eight years, at eighty-five percent, to be served in the Tennessee Department of Correction. In the "special conditions" section of the judgment, the trial court recommended that the Petitioner serve his sentence at the Lois M. DeBerry Special Needs Facility (DeBerry).

The Petitioner timely filed a pro se petition for post-conviction relief from the judgment. Upon appointment of counsel, the Petitioner filed an amended petition. The post-conviction court held an evidentiary hearing, and the Petitioner testified first.

The Petitioner explained that he was then housed in the Morgan County Correctional Facility. He testified that the same attorney represented him in both general sessions and criminal court. He claimed that during the time leading up to his guilty plea agreement, he was housed in the Blackwood Detention Center, and during this time, his trial counsel visited him twice to discuss his case. He stated the conversations lasted "thirty, maybe forty-five minutes if that." The Petitioner testified that trial counsel explained the possible penalties, including the sentencing range. Additionally, he said that trial counsel presented him with the eight-year guilty plea offer from the State during his first court date.

The Petitioner further testified that during this conversation in which his trial counsel explained the State's plea offer, the Petitioner was under the influence of medication. When asked what type of medication he was taking, the Petitioner responded that "they had [him] on . . . Risperdal and a couple other medications that [he] got from the county psych people." He then testified that he was diagnosed with "[b]ipolar one, major depressive disorder." The Petitioner was then asked if he had ever met with an individual from Vanderbilt who may have assessed his mental health history. The Petitioner recalled meeting with a woman from Vanderbilt but claimed that this person did not "ask [him] about [his] mental health history[,]" but instead asked "[him] did [he] know anything about the proceedings of court."

The Petitioner explained that he had an extensive mental health history. He described the following:

> I have multiple suicide attempts. Centennial has records of that. I've been housed in Middle Tennessee for about forty-five days. There's another hospitalization I had. I forgot the name of the hospital, but it's on Eastland and Gallatin. Mental Health Co-Op and the crisis center has numeral [sic] evidence of me going there and being on respite houses, getting new medication. I was currently -- even at the time of this I was currently housed on mental health property from Park Center.

The Petitioner explained trial counsel told him that "she was going to send somebody out to evaluate [him]," and he believed "the evaluation was going to be about [his] mental health background, not the court proceedings."

The Petitioner claimed that he was under the influence of medication the day he pled guilty to aggravated robbery pursuant to an agreement with the State. He stated that he had taken "Risperdal" and other medications, but he "couldn't remember the name of them." The Petitioner claimed that he complained about his mental state to trial counsel the day he entered the guilty plea and said "[he] asked her specifically why she never tried to speak up on [his] mental health history and why she didn't have any paperwork on [his] mental health history." The Petitioner claimed his counsel's response was that she would "try to get [him] recommended to DeBerry."

The Petitioner further testified about the nature of the discussions he had with trial counsel regarding the State's plea offer. When asked if the Petitioner understood "what [he was] pleading guilty to," the Petitioner responded that "[he] understood, but it wasn't an intelligent plea because [he] felt like . . . [he] was backed into a corner, like [trial counsel] kept saying . . . you don't have to take [the plea offer], you can wait, but [the offer is] not going to change." The Petitioner said he asked his trial counsel about "showing [the State] the mental health paperwork and getting [his] record[,]" to which she responded, "it wouldn't matter." According to the Petitioner, trial counsel explained that "the prosecutor didn't want to see it."

The Petitioner also testified that he believed there were other pretrial defense strategies that his attorney should have pursued. He elaborated and claimed that "she should have at least let [him] know the extent of how serious [his] mental health paperwork would have been and had [him] evaluated correctly for [his] mental health background and not the competency of the court."

The Petitioner was then asked about his education level. The Petitioner indicated he had completed school through the ninth grade and that he was dyslexic. When asked if he was able to understand the terms of the plea agreement, the Petitioner stated that "all [he] remember[ed] [was] just saying, yes, [he] under[stood] and signing it. [He] didn't really even get a chance to read anything."

The Petitioner was also questioned about a statement he had previously given to law enforcement regarding his case. When asked if he was under the influence of any kind of medication at the time he made this statement, the Petitioner explained that "[he] was definitely under the influence, and [he] had been up for about three or four days, a lot of stressful nights going through things with [his] family life, pressure again because of what had been going on. So when [law enforcement] came and got [him] . . . [he] had alcohol and other narcotics in [his] system." The Petitioner was asked if the presence of

these substances "affected [his] ability to voluntarily consent . . . to giving a statement[,]" to which he responded, "Yeah[.]"

The Petitioner then testified about what his defense would have been had his case gone to trial. The Petitioner explained he believed his defense at trial would have been "not guilty by reason of mental disease or defect." He further explained that the woman from Vanderbilt was the only person to evaluate him. He asserted that no one else did any sort of "assessment or evaluation to determine whether or not [he] was competent or insane . . . at the time of the alleged offense."

On cross-examination the Petitioner was asked if he remembered speaking to his attorney at his "four [c]riminal [c]ourt appearances[,]" and the Petitioner said, "if [he] came to court, yeah, [he] talked to her. There wasn't no time that [trial counsel] wasn't [in court]." The Petitioner agreed that "every time [he] came to court [he] talked to [trial counsel]." The Petitioner also explained trial counsel came to visit him twice while he was in custody at Blackwood and, during one of those visits, she gave him "a copy of discovery." The Petitioner stated that trial counsel told him about the State's plea offer. When asked if his case "was continued multiple times for [him] to think about that offer[,]" the Petitioner responded, "It was continued and same thing, yes." The Petitioner was then asked if he had discussed his "options of either accepting that deal or taking the case to trial[.]" The Petitioner explained that he

> talked to [trial counsel] about the options of getting [his] records and seeing what that was going to do. And when [trial counsel] let [him] know that [the prosecutor] wasn't going to pay no attention to that . . . then [he] asked [trial counsel] for a professional opinion and that was her professional opinion.

Counsel for the State asked the Petitioner if he "understood [he] had the right to go to trial if [he] wanted to, but [he] chose to plead guilty." The Petitioner testified that "I chose to plead guilty because I took her opinion, her professional opinion, because she's saying the defense I asked her about wasn't going to go any further."

The Petitioner was questioned about his guilty plea. The Petitioner testified that he did not remember reading the plea agreement, but he did remember signing it. The Petitioner was asked if he told the judge he could read, and the Petitioner explained that he told the judge he could read, he had obtained his GED, and he had started his first semester of college. The Petitioner also testified that he told the judge he had thoroughly discussed "everything about [his] case with [trial counsel.]" The Petitioner also agreed that he told the judge he was taking medication at the time of entering the plea but that it "wasn't affecting [his] ability to understand." When asked if he told the judge at the plea hearing that he understood his right to a trial, the Petitioner said, "That's correct." The

Petitioner also agreed that he told the trial judge he was "satisfied with the work [trial counsel] did."

Following cross-examination, the court asked the Petitioner several questions. The Petitioner clarified that he left school after completing the ninth grade, but he later completed his GED and had started his first semester of college. He said that he could read but explained that reading was difficult for him due to his dyslexia. The court asked him if he remembered that trial counsel asked for a recommendation that the Petitioner serve his sentence at DeBerry, and the Petitioner testified that "[y]es, he remember[ed] the recommendation to DeBerry." When the court stated that the Petitioner's attorney "was obviously aware of [his] condition" because "she asked about recommendations[,]" the Petitioner explained that "[trial counsel] asked for the recommendation because [the Petitioner] kept mentioning the mental health court. But she never obtained any records that I asked her for the mental health system, period." The court again asked the Petitioner if he "understood [he] had a right to go to trial if [he] wanted to." The Petitioner repeated that he trusted his trial counsel but claimed that he did not actually understand anything about "the system." He further explained:

> [He] trusted his attorney. Until [he] found out differently and when [he] talked to somebody that knew about law and he showed [the Petitioner] in law books how [his] defense and [trial counsel] should have took [his] defense is the only reason [he] came back on post[-]conviction.

The State then called the Petitioner's trial counsel to testify. Trial counsel testified that she was a Tennessee licensed attorney and had been licensed for nine and a half years. She stated she had been an assistant public defender for those nine years and that one hundred percent of her legal practice had been criminal defense. Trial counsel explained that she was assigned to the Petitioner's case. She stated that she attended his preliminary hearing, attended his arraignment, and filed for discovery regarding his case. She testified that she met with the Petitioner on his "arraignment date" and then met with him on "three or four discussion dates." Trial counsel explained that most of these discussion dates involved her discussing the Petitioner's case with the State and "trying to get a plea offer and then going back and talking to [the Petitioner]."

Also, trial counsel testified that she met with the Petitioner outside of those court dates. She stated that she "met with [the Petitioner] . . . twice before he was indicted and then three times since he was indicted." She explained that the first three visits were to check in on the Petitioner, inquire about his medication, and make sure "that he was good" and "stable." The three visits following the Petitioner's indictment were to review and discuss discovery, including the statement the Petitioner made to the police. She testified that these visits occurred at the facility where the Petitioner was being held and that she discussed with him the charges brought against him, his range of punishment,

and possible defenses that he might have. She further testified that she and the Petitioner discussed the risk of going to trial, and she said that she "thought the defense in his case would have been that it was a simple robbery and not an aggravated robbery. And the video surveillance was not very helpful to us on that." Trial counsel was asked if she remembered the Petitioner's asking her about filing a motion to suppress his statement, but she did not remember his mentioning that to her. She stated that she could not "remember looking into [suppressing the statement,]" but she knew that the Petitioner "gave a recorded interview to the police." She claimed that she watched the video recording and that she did not "have notes of any issues with the statement."

Trial counsel further testified that the State made an offer regarding the Petitioner's case. She stated that she thought the State made an offer "by the second discussion date, and then it never changed." She then explained that the Petitioner's case was continued several times so that the Petitioner would have time to consider the State's offer and discuss it with trial counsel and his family. Trial counsel also testified that she explained to the Petitioner his right to go to trial and what might happen at such a trial. She said that, eventually, the Petitioner decided to accept the State's offer rather than go to trial.

The State then asked trial counsel to discuss the Petitioner's mental health history. Trial counsel explained that the first time she met the Petitioner "he seemed very flat" and that he "was completely out of it." Because of this interaction, trial counsel consulted an attorney in her office who had experience with "mental health court[.]" She then postponed the Petitioner's preliminary hearing and placed the Petitioner on forensic evaluation. She testified that following his forensic evaluation, "he came back competent and sane." She further testified that the next time she saw the Petitioner, "he seemed to be a lot better" and that she thought "his medication had been corrected." After seeing him in an improved state, she proceeded with a preliminary hearing.

Trial counsel further stated that following the Petitioner's forensic evaluation, she did not have any concerns that the Petitioner's medication was not working or that he did not understand what he was doing. She said that he was prescribed medication and that, to her knowledge, the Petitioner took this medication throughout her representation. Trial counsel was asked if "at the time of [the Petitioner's] plea [she] [felt] like he could fully appreciate the nature and the consequences of the offense and the plea," to which trial counsel responded, "Yes." Trial counsel testified that she met with the Petitioner the day he pled guilty to go over the agreement with him. When asked whether she read the agreement to the Petitioner or if he read the agreement, trial counsel said that she could not "remember specifically, but generally [she] always read [the agreement] and ha[d] it for the client to see." She stated that the Petitioner signed the plea agreement, and she did not remember his having any questions or concerns regarding the agreement.

-6-

On cross-examination, trial counsel testified further about the Petitioner's possible defenses if he had chosen to proceed to trial. She agreed that the defense strategy would have been to argue that the Petitioner was guilty of simple robbery rather than aggravated robbery. Trial counsel also explained that she had the forensic evaluation done to determine the Petitioner's competency to stand trial and whether a not guilty by reason of insanity defense would be supported. Trial counsel testified that when she received the report from Vanderbilt regarding the Petitioner's evaluation, she visited him before the preliminary hearing and told him the results of the testing. Trial counsel testified that when she met with the Petitioner, she also discussed the State's plea offer of an eight-year sentence, and she affirmed that this offer never changed. She then said that she did not hire an investigator for the Petitioner's case because she did not think one was necessary.

The transcript of the Petitioner's guilty plea proceeding was entered as an exhibit at the post-conviction hearing. During his guilty plea submission hearing, the Petitioner told the court that he had completed his first year of college and that he read through his plea agreement together with his trial counsel. He testified that he did not have any questions while reading over the agreement, and he did not have any questions for the court either. The court then asked the Petitioner if he was taking any medications, and the Petitioner responded that he was taking "Risperdal" and "two other medicines." The court asked the Petitioner the following questions:

Q: Now, the fact that you've taken your medication, is that affecting your ability to understand what you're doing?

A: No, ma'am.

Q: And are you having any trouble understanding what you're doing?

A: No, ma'am.

Q: Do you understand . . . that you don't have to plead guilty? You have a right to go to trial but that you are giving that right up as part of this plea?

A: Yes, ma'am.

Q: Is anybody forcing you to do that or promising you anything other than what we've talked about?

A: No, ma'am.

Q: Have you been satisfied with the work [trial counsel] has done on your case?

A: Yes, ma'am.

Also, the court asked the Petitioner's trial counsel if she had discussed this plea agreement with the Petitioner and if she believed that he understood what he was doing and was "entering this plea freely and voluntarily[,]" to which trial counsel responded, "Yes, your honor." After listening to the State's proof regarding the Petitioner's case and determining that the Petitioner's plea was "voluntarily and factually based[,]" the court found the Petitioner guilty of aggravated robbery, imposed an eight-year sentence, and recommended that the Petitioner serve his sentence at DeBerry.

Additionally, the letter from Vanderbilt regarding the Petitioner's forensic evaluation was entered as an exhibit at the post-conviction hearing. The letter was from the Director of the Vanderbilt Forensic Evaluation Team (Director), and it indicated that the Petitioner had been evaluated to determine his competency to stand trial and his mental condition at the time of the alleged offense. The Director interviewed the Petitioner and reviewed "available case-related, jail, and mental health documents." The Director made the following conclusions:

> In regards to [the Petitioner's] competency to stand trial, we have concluded that [the Petitioner's] mental condition at the time of the evaluation was such that he had sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against him. It is recommended that he continue to receive and remain compliant with mental health services in jail to maintain competency.
>
> After the completing of the insanity evaluation based on T.C.A. 39-11-501, it is our opinion that a defense of insanity cannot be supported. This opinion is based on the determination that at the time of the commission of the act(s) constituting the alleged offenses, the available evidence does not suggest that [the Petitioner] was experiencing mental illness that caused him to be unable to appreciate the nature or wrongfulness of such alleged act(s).

The post-conviction court subsequently denied the petition. In its order denying the Petitioner relief, the post-conviction court found that the Petitioner's trial counsel reviewed the charges brought against the Petitioner with him and discussed the risks of going to trial. Trial counsel discussed the discovery with the Petitioner, and she had him complete a forensic evaluation regarding his mental health. The court noted that the

Petitioner had two unappealing options to either accept the State's plea offer or proceed to trial in a "case where the State had strong evidence . . . ." The court then stated, "Granting post-conviction relief would simply place the Petitioner in that same position of either going to trial or accepting the State's offer should the State be willing to engage in plea negotiations." The court concluded by stating, "A review of the record here, including the guilty plea transcript, affirmatively demonstrates that the [P]etitioner's guilty plea was made with an awareness of the consequences, and, as such, the guilty plea was voluntarily, intelligently, and knowingly entered."

On December 2, 2015, the Petitioner filed a timely notice of appeal.

ANALYSIS

On appeal, the Petitioner argues that the post-conviction court erred in finding that the Petitioner entered his guilty plea knowingly. The Petitioner argues that his guilty plea was not knowing and voluntary because he was unable to understand his plea agreement due to his mental illness. The Petitioner further argues that his trial counsel failed to adequately investigate his mental illness in an effort to persuade the State to reduce the charge brought against the Petitioner or find that the Petitioner was unfit to stand trial. The Petitioner contends that he would have demanded a trial by jury if he had understood the nature and consequences of his plea. The State responds that the Petitioner entered a knowing and voluntary guilty plea.

As a separate issue, the Petitioner argues that he did not receive effective assistance of counsel at his trial due to trial counsel's deficient performance. Specifically, the Petitioner argues that his trial counsel did not thoroughly investigate his mental health history in an effort to show that the Petitioner was unfit to stand trial. The Petitioner also argues that because trial counsel did not have an adequate understanding of the Petitioner's mental health history, trial counsel failed to file a motion to suppress a statement he made to law enforcement. The Petitioner contends he was under the influence of narcotics and alcohol at the time he made this statement. The Petitioner avers that this claim of intoxication, along with his mental health history, should have led trial counsel to file a motion to suppress the Petitioner's statement to law enforcement. The State responds that he did receive effective assistance of counsel.[1]

*I. Standard of Review*

---

[1] The Petitioner has commingled his arguments regarding his involuntary and unknowing guilty plea claim and his ineffective assistance of counsel claims. For the sake of clarity, we will address them separately in the analysis section of this opinion.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

## II. Involuntary and Unknowing Guilty Plea

We discern the Petitioner's contention in this regard to be that his mental illness rendered his guilty plea unknowing and involuntary. When analyzing the voluntariness of a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238 (1969), and the state standard set forth in State v. Mackey, 553 S.W.2d 337 (Tenn. 1997). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242. Similarly, in Mackey the Tennessee Supreme Court required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542. A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

At the outset, we note that the Petitioner has failed to present any medical records or testimony, other than his own assertions, in support of his claim that his mental health illness rendered his plea unknowing or involuntary. Ordinarily, a petitioner should provide medical records or medical testimony when relying on a medical condition to assert that a plea was not entered voluntarily or knowingly. See Darrell Wayne Bumpas v. State, No. M2010-00222-CCA-R3-PC, 2010 WL 5140673, at *8 (Tenn. Crim. App. Dec. 14, 2010) (concluding that the petitioner's "bare allegations, unsupported by medical testimony, about the use of psychiatric drugs was insufficient to support a claim that his guilty plea was not knowingly and voluntarily entered").

Moreover, at the guilty plea submission hearing, the Petitioner indicated that he understood the charges against him and the details of his guilty plea. When asked if he was taking any medications at the time of the hearing, the Petitioner asserted that he was taking several medications, but he informed the trial court that these medications were not affecting his ability to understand what he was doing. The Petitioner further told the court that he understood he had the right to take his case to trial rather than entering a guilty plea. And finally, the Petitioner assured the court that he was satisfied with the work trial counsel had done on his case. Additionally, trial counsel informed the trial court that she had discussed the plea agreement with the Petitioner and that she believed he was entering the plea knowingly and voluntarily.

The post-conviction court found that the Petitioner understood what he was pleading guilty to and knew that if he did not wish to plead guilty, he could take his case to trial. In its order denying the Petitioner post-conviction relief, the court noted that the "Petitioner agreed that the State extended an offer on the first discussion date and that the case was continued for [the] Petitioner to consider whether to accept the offer or proceed to trial." The post-conviction court stated that the Petitioner "conceded that . . . during the plea hearing he told the judge that he had discussed his case with his attorney, that he was taking medication and it did not affect his decision-making, and that he was satisfied with his [t]rial [c]ounsel." The court further observed that the Petitioner had received his GED and had enrolled in college classes. Moreover, the court noted that the Petitioner testified he was able to read, however due to his dyslexia, he had to read a document multiple times before he could fully understand it.

The post-conviction court concluded that the Petitioner had "two unappealing options: to go to trial in a case where the State had strong evidence – including video surveillance, witness identification from a photo lineup, and his own confession – or to accept the State's only offer to plead guilty to the offense charged for a sentence to be served at a mandatory 85% release eligibility." Granting the Petitioner relief "would simply place [the] Petitioner in that same position of either going to trial or accepting the State's offer should the state be willing to engage in plea negotiations." The post-conviction court concluded that the Petitioner's plea was entered voluntarily and knowingly, and the record supports this conclusion.

### III. Ineffective Assistance of Counsel

The Petitioner also asserts that his plea was not knowing or voluntary due to the ineffective assistance of his trial counsel. Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. Dellinger v. State, 279 S.W.3d 282, 293 (Tenn. 2009) (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1)

that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. Hellard v. State, 629 S.W. 2d 4, 9 (Tenn. 1982).

In the context of a guilty plea, the effective assistance of counsel is relevant only to the extent that is affects the voluntariness of the plea. Therefore, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

Regarding trial counsel's failure to adequately address the Petitioner's mental health, the post-conviction court concluded that the Petitioner did not suffer from deficient representation. The evidence presented at the post-conviction hearing reflects that trial counsel discussed the plea agreement with the Petitioner and explained that if he chose not to accept the deal, he could proceed to trial. After meeting with the Petitioner, trial counsel was concerned about the Petitioner's mental health and ordered a mental health evaluation for the Petitioner. The results of this evaluation revealed that the Petitioner was competent to stand trial and that a defense of insanity could not be supported. Trial counsel discussed the plea offer, sentence range, and potential defense at trial. She also discussed the risks of taking the case to trial with the Petitioner. The Petitioner decided to accept the State's plea offer. The record supports the post-

-12-

conviction court's conclusion that the Petitioner received effective assistance of counsel in this regard.

Next, the Petitioner contends that his trial counsel was ineffective for not filing a motion to suppress his statement to law enforcement. In order to demonstrate that counsel's failure to file a motion to suppress prejudiced the petitioner, this court has addressed the evidence necessary at a post-conviction hearing:

> It is well settled that when a [p]etitioner in post-conviction proceedings asserts that counsel rendered ineffective assistance of counsel by failing to call certain witnesses to testify, or by failing to interview certain witnesses, these witnesses should be called to testify at the post-conviction hearing; otherwise, [p]etitioner asks the [c]ourt to grant relief based upon mere speculation. Black v. State, 794 S.W.2d 752, 757 (Tenn. 1990). The same standard applies when a [p]etitioner argues that counsel was constitutionally ineffective by failing to file pre-trial motions to suppress evidence. In order to show prejudice, [a] [p]etitioner must show by clear and convincing evidence that (1) a motion to suppress would have been granted and (2) there was a reasonable probability that the proceedings would have concluded differently if counsel had performed as suggested. Vaughn v. State, 202 S.W.3d 106, 120 (Tenn. 2006) (citing Strickland, 466 U.S. at 687). In essence, the petitioner should incorporate a motion to suppress within the proof presented at the post-conviction hearing.

Terrance Cecil v. State, No. M2009-00671-CCA-R3-PC, 2011 WL 4012436, at *8 (Tenn. Crim. App. Sept. 12, 2011). This court further explained, "In other words, it is incumbent upon a petitioner to prove that what he says trial counsel should have done would have had merit and produced admissible, relevant evidence." Sanders v. State, No. W2012-01685-CCA-R3PC, 2013 WL 6021415, at *4 (Tenn. Crim. App. Nov. 8, 2013).

At the post-conviction hearing, the Petitioner failed to present any evidence to suggest that the trial court would have granted a motion to suppress his statement to law enforcement. Trial counsel testified that she reviewed this statement and had made no notes mentioning any problems with the admissibility of the Petitioner's statement. The Petitioner offered no proof at the post-conviction hearing that his statement to law enforcement was not voluntary other than his assertion that he "was definitely under the influence" when he made the statement because he had "alcohol and other narcotics in [his] system" when law enforcement detained him for questioning. We agree with the post-conviction court's conclusion that trial counsel's failure to file a motion to suppress this statement did not amount to ineffective assistance.

CONCLUSION

-13-

Based upon consideration of the foregoing and the record as a whole, the post-conviction court's denial of the petition for post-conviction relief is affirmed.

_____

D. KELLY THOMAS, JR., JUDGE